[Opinion delivered May 24, 1880.]

---

### P. J. WILLIS & BRO. v. D. V. KIRBIE.

(Case No. 3037.)

1. EVIDENCE — PRACTICE.— When offered on other issues, it is not error to exclude testimony as to facts relied on in a special plea, to which exceptions have been sustained.

2. CHARGE OF THE COURT.— Where erroneous charges have been given the judgment will be reversed, though the testimony may have been sufficient to support the verdict had the issues been properly submitted.

3. HOMESTEAD — JUDGMENT CREDITOR.— The holder of a mortgage has a right to release, in exchange for the homestead of the mortgagor, his lien on property covered by his mortgage, and will take, as against a judgment creditor of the mortgagor, a perfect title to the homestead.

APPEAL from Parker. Tried below before the Hon. A. J. Hood.

September 11, 1874, Kirbie sued W. H. Graves in trespass to try title for several improved town lots in the town of Weatherford. The petition set out that plaintiff had obtained a judgment February 6, 1874, in the district court of

Parker county against A. S. Fain; that the minutes book of the court had been destroyed by fire; and that June 5, 1874, at a regular term of the court, the judgment had been regularly substituted; that execution had issued thereon July 9th, thereafter, and sale by the sheriff under the judgment and execution, August 4, 1874, and purchase of said lots and deed therefor by the sheriff to plaintiff; and that said lots were the property of Fain and subject to execution. Value of rents alleged; prayer for possession, damages and costs.

P. J. Willis & Bro., at their own instance, became defendants as the landlords of Graves, and conducted the suit.

They pleaded not guilty; specially a defense (hereafter set out) setting up a parol agreement for an exchange of securities between Fain and the defendants, whereby they claimed to have a prior lien on the lots; and that the lots were the homestead of Fain and wife from 1867, and up to June 3, 1874, when they had conveyed the same by warranty deed to defendants. The defendants had Fain and wife made parties.

The testimony was, on part of the plaintiff, the transcript of the judgment and execution as alleged, and the sheriff's deed for the property; that defendants claimed through Fain, the judgment debtor; that Willis & Bro. had taken control of the lots about September 1, 1874, and had let the same to Graves, the original defendant; and that the rent was worth $20 per month.

The defendants, Willis & Bro., read their deed from Fain and wife of date 3d June, 1874. Fain, as witness, testified "that he had lived from 1867 upon the property in controversy until the middle of October, 1873, at which time he left and moved to the place where he now lives; that he had built there a good house, and fully improved the place where he now lives before he moved, and prepared it for a home; . . . that October, 1873, he moved from the property in controversy to his present place of residence, carrying his family and everything he had; . . . that he had expended $1,500 to $2,000 before moving. That the new place

was much more valuable than the old;" that "he went then to live on the place; that he ate, slept, kept his family at the new place; had his stock, provisions and everything there; . . . that when he moved from the place in controversy to the place where he now resides, he did so with the intention of making the new place his home if he could."

"That before moving he had given Willis & Bro. a deed of trust on a large amount of property, including the place he moved to and where he still resides. That he, when he moved, intended, if he could, to free the place of that incumbrance and make it his home; and he then, also, intended, if he failed to pay off the deed of trust and hold the new place as a homestead, to hold as a homestead the house and lots in controversy in this suit. That since he moved he had paid off the deed of trust and freed the place where he now lives of the trust deed, and he now claimed the place as his homestead, but that he had also claimed the place in controversy after leaving it as his homestead, conditionally; that is, he was intending to come back to it if he lost the title and possession of the place where he moved to and still lives." . . . That he owned both the place in controversy and the place on which he now lives, when he moved in October, 1873, but before that time he had given Willis & Bro. a deed of trust on the place; that he had also given E. A. Hutchison a deed of trust on the place in controversy to secure about $1,000; that his (witness's) wife did not sign said deed of trust on the property in controversy; . . . that Willis & Bro. had a deed of trust upon the property on which witness now lives, at the time he moved upon the same; that he and his wife deeded the premises in controversy to Willis & Bro. in June, 1874, and raised the first deed of trust upon the new residence, and the same day gave another upon it to secure $1,250, etc. There were no acts or declarations of Fain's wife in evidence.

The deed from Fain and wife, duly authenticated, was read, conveying the lots in controversy to Willis & Bro. June 4, 1874.

In rebuttal it was shown that Fain, when building and

before moving to the new residence, spoke of making it his home, etc.; that the place was outside the town limits, etc.

The court charged the jury with unusual care on the subject of homestead rights. That part specially objected to appears in the opinion of the court. The defendants asked charges, among other things, as to abandonment, the rule in Gouhenant *v.* Cockerell and Shepperd *v.* Cassiday.

The jury found for plaintiff and $100 rent; also as against Fain as warrantor in favor of Willis & Bro.

Judgment was rendered upon the verdict. A motion for new trial having been overruled, the defendants, Willis & Bro., appealed.

Errors assigned were:

1. Sustaining plaintiff's exceptions to special answer of defendants, filed October 9, 1874.

2. Sustaining objections to deed of trust from Fain and wife to Willis & Bro., of date May 10, 1873.

3. Excluding the two deeds from Fain to defendants for the store and for the one hundred and sixty acres, offered by defendants.

4. In excluding all evidence in regard to the lien on the property occupied at time of the trial by Fain and wife.

5. Refusing the instructions asked by defendants.

6. In instructions given by the court, and especially seventh, eighth and ninth ("in which the rule of law in regard to the acquisition and abandonment of homestead is reversed and the burden of proof thrown on the opposite party").

7. The jury found contrary to the law and evidence.

8. In giving judgment for $100 rents against defendants when not asked.

9. The instructions given did not comprise the law as applicable to the facts and evidence of this cause.

10. The overruling the motion of Willis & Bro. for a new trial.

*McCall & McCall* and *Peeler, Montgomery & Fisher,* for appellants.

*Watts & Lanham* and *Jackson & Jackson,* for appellees.

A. S. WALKER, J.— The first four assignments will be dis-
posed of by considering whether the plea was good; the
testimony excluded became irrelevant unless the facts were
a defense.

The substance of the special answer to which exceptions
were sustained is: The appellants, who interplead as the
landlords of Graves, answer that in October, 1873, Fain
then occupying the property in controversy as a homestead,
and being then the head of a family, wished to exchange
the property for certain other property, the same upon which
Fain now lives, upon which last named property appellants
had a deed of trust from Fain and wife to secure the pay-
ment of a debt due by Fain to appellants; that at that time,
October, 1873, appellants agreed with Fain to lift the deed
of trust from the one piece of property and place it upon
the other; that this contract was verbal; that Fain, relying
on appellants' promise, left the property now in controversy,
and, going upon the property where he now lives, made val-
uable improvements, of the value of $2,000; that appellants,
in June, 1874, in accordance with their agreement made in
the fall of 1873, released the deed of trust which they had
upon the property where Fain now lives, and took a deed
from Fain and wife to the property in suit; that this agree-
ment, although verbal, was and is an exception to the stat-
ute of frauds; that appellants, by virtue of the agreement
pleaded, acquired a right or equity in the land in suit, prior
in point of time to plaintiff's, and superior to it.

Giving to this plea the fullest consideration, it would not
allege that prior to June, 1874, the date of the deed from
Fain and wife to Willis & Bro., the latter had more than an
equitable lien upon the property. Such verbal contract
cannot have greater force than it would had it been re-
duced to writing and signed by all the parties and duly
acknowledged. If so written it would be only a mortgage
or trust deed (which is a species of mortgage). Such mort-
gage takes no effect as a lien upon property as to third par-
ties unless recorded. Pas. Dig., 4985.

This contract, as pleaded, could not defeat the alleged
title of the plaintiff under the *judgment lien.* The plea

was therefore bad, and there was no error in sustaining exceptions to it, nor in excluding the testimony offered with reference to the facts relied on in it as a defense when offered on other issues.

The fifth error assigned relates to the charges asked by the defendants. The charges asked are numerous, and no special complaint having been made, they will not be particularly noticed.

The sixth assignment questions the correctness of the seventh, eighth and ninth charges given by the court. They are as follows, so far as necessary to be stated: . . . The law is, that where a man, the "head of a family, owns a tract of land on which he has created an incumbrance (a deed of trust or mortgage, for instance), and moves with his family on to and makes his home on the land, intending to remove the incumbrance and make it his home, and he does in fact, in any way, afterwards, remove such incumbrance and continue to reside there and make it his home, then the date of his accrual of such homestead would be, in law, the date of his settlement on the land, and not the date of the removal of the incumbrance."

8. "Therefore, if you find from the evidence that Fain, with his family, removed from the lots in controversy, and settled where he now lives, intending to remove the incumbrance on the land (if any existed), and make his home there, and that he now owns, as a homestead, the place where he now lives, and has continually resided there, and that such removal from the lots in controversy by Fain and wife occurred before the rendition of Kirbie's judgment, February 6, 1874, it will be your duty in the case to return a verdict in favor of plaintiff, Kirbie."

9. "But on the contrary, if you find from the evidence that Fain, at the time he removed with his family from the lots in controversy (if he did so remove), did so intending certainly to return and make his home there, and that he, Fain, up to the 3d day of June, 1874, had neither acquired a new home, nor changed that intention, then and in that case, it will be your duty to return a verdict in favor of defendants."

Calling attention to the testimony that Fain was indebted and had mortgaged *all his property* but his homestead to Willis & Bro. He desired to change his homestead to a ten-acre lot adjoining the town of Weatherford. By consent of Willis & Bro., and with an agreement that they should, for their release to that, have the homestead. On this agreement Fain moved, intending to make the new residence his homestead if he could; that is, if he could exchange the *old* for the lien upon the new. The intent to abandon the old seems to have existed only in the intent to use it in acquiring the new.

Looking to the protection alone of the present rights of Fain, the charge was not error. But in relation to the property in controversy, Willis & Bro. stand in the same condition that Fain and wife did on June 4, 1874. If the old homestead was in fact and intent abandoned, evidenced by the removal to the new, with intent to remain, then Willis & Bro. took subject to Kirbie's judgment lien. If, however, the disposition of the old as a means of settling the incumbrance on the new, was a prerequisite to the *existence* of the *fixed intent* to make the new *the homestead*, then Willis & Bro. took the property as exempt.

As against Kirbie, Fain could not change his homestead; Kirbie had a lien either upon one or the other of these places of residence. The charge of the court floated back the date of acquisition of the new to a time anterior to Kirbie's judgment as an effect of the transaction of Fain and wife with Willis & Bro. June 4, 1874, which was subsequent to Kirbie's lien.

The homestead exemption is designed to secure to the family of the debtor a real benefit. The wife has a veto upon the disposition of it by the husband, in fact as in theory. It would be as much an infringement of her right to allow a husband to dispose of *the homestead* by designating another, as by his deed. In this case there is no testimony of any act or declaration of the wife prior to her deed to Willis & Bro. The acts of the husband alone could not change it.

The *status* of the property at the date of Kirbie's judg-

ment is the real subject of inquiry; and if at that date Mrs. Fain had homestead rights therein, the homestead would pass to Willis & Bro.

Its homestead quality having been proved, to divest the property of that quality it devolved upon plaintiff, with the burden of proof upon him, to prove either that in *fact* and *intent* a new one had been acquired, thereby effecting an abandonment; or that, with clear intent not to return, it had been left. These issues should have been submitted to the jury. Neither was given in terms recognized as expressing the law.

The defendants asked instructions expressed in legal phraseology pertinent to a case of mere abandonment, and they were refused. The court, in its charge as given, attached to the acquisition of a new home, unexplained save by the discussion in the seventh and eighth charges, the consequence of conclusive evidence of abandonment of the old.

Besides the court had, in effect, by the charge, attached to the unformed intention, added to the transaction between Fain and wife with Willis & Bro. on June 4, 1874, in which Willis & Bro. had taken a deed to the old as homestead, in discharge of the lien upon the new, so great effect as to retroact and deprive the property so conveyed to Willis & Bro. of the only quality which gave it value to them. This was charge upon the weight of testimony, and left but little to the jury.

In addition the court imposed upon defendants the burden of proving that the intent to return *certainly* existed, and that it was not changed, as necessary in order to negative abandonment, as the result of the removal. This was error. We cannot know but that these charges influenced the jury. They were upon the real issue. Although the testimony may have been sufficient to sustain the verdict had the issues been clearly submitted, still for such error the judgment should be reversed.

REVERSED AND REMANDED.